## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMIE FLACK, LLC, a Pennsylvania LLC d/b/a Rustique,** | : | **No. 3:16cv1679** |
| **Plaintiff** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **RUSTIQUE SPECIALITY GIFTS, LLC,** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Plaintiff Jamie Flack, LLC (hereinafter "plaintiff") has operated a home décor, gift, and speciality paint store named "Rustique" in Kingston, Pennsylvania since 2014.  Defendant Rustique Speciality Gifts, LLC (hereinafter "defendant") opened a gift store named "Rustique Speciality Gifts" in Dallas, Pennsylvania in April 2016.  Plaintiff brings the instant trademark and unfair competition action alleging the defendant's use of the confusingly similar name "Rustique Speciality Gifts" illegally infringes on plaintiff's common law trademark rights for the "Rustique" mark as used in connection with plaintiff's goods and services.  Before the court for disposition is defendant's motion to dismiss plaintiff's complaint.  For the reasons explained below, we will deny defendant's motion.

### Background

This trademark infringement and unfair competition case arises from the use of the "Rustique" mark by two stores located in Luzerne County,

Pennsylvania.  Plaintiff owns and operates a store named "Rustique" in

Kingston, Pennsylvania.  (Doc. 1, Compl. (hereinafter "Compl.") ¶ 1).

Plaintiff has used the "Rustique" mark to sell gifts, specialty paints, and

home décor products in addition to providing retail store services featuring

the goods of others, promoting the products of others, conducting

educational workshops pertaining to home décor and furniture refinishing,

and making custom furnishings/wall-hangings for others.  (Id. ¶ 8).

Plaintiff opened its store in Kingston, Pennsylvania on Friday, November

28, 2014.  (Id. ¶ 7).  The "Rustique" mark is featured prominently in

plaintiff's marketing, signage, website, and Facebook page.  (Id. ¶¶ 9-10).

       In April 2016, the defendant opened a gift shop named "Rustique

Speciality Gifts" in Dallas, Pennsylvania.  (Id. ¶ 11).  Similar to plaintiff, the

defendant sells gifts, home décor merchandise, and related products.

(Id.)  Defendant's use of the "Rustique" mark has confused customers

traveling from other states to purchase plaintiff's products.  (Id. ¶ 14).

Specifically, customers have traveled to the defendant's store thinking the

defendant is the plaintiff.  (Id. ¶¶ 13-14).

       Plaintiff demanded the defendant cease and desist from unlawfully

appropriating the "Rustique" mark.  (Id. ¶ 15).  The defendant, however,

2

continues to use the "Rustique" mark.  (Id. ¶ 16).

On August 12, 2016, plaintiff filed a three-count complaint.  Count I asserts unfair competition and false advertising claims under section 1125(a) of the Lanham Act, 15 U.S.C. § 1125(a) (hereinafter "Lanham Act").  (Id. ¶¶ 17-29).  Counts II and III aver Pennsylvania state law claims for trademark infringement and unfair competition.  (Id. ¶¶ 30-37).

On September 7, 2016, the defendant filed a motion to dismiss plaintiff's complaint.  (Doc. 6).  The parties have briefed their respective positions and the matter is ripe for disposition.

**Jurisdiction**

As plaintiff brings suit pursuant to the Lanham Act, we have federal question jurisdiction.  See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  We have supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Legal Standard**

The defendant filed a motion to dismiss plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6).  The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.  All

3

well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)).  The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35.  In evaluating the sufficiency of a complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted).  The court need not accept legal conclusions or unwarranted factual inferences.  See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.

4

1997)).

**Discussion**[1]

Count I asserts a claim of trademark infringement and unfair competition pursuant to the Lanham Act.[2]  To establish a Lanham Act trademark infringement claim, plaintiff must establish that: (1) its mark is valid and legally protectable; (2) it owns the mark; and (3) defendant's use of the mark is likely to create confusion concerning the origin of goods or

---

[1]  We only discuss Count I, trademark infringement and unfair competition under the Lanham Act, because our analysis of plaintiff's federal trademark claim applies equally to Counts II and III–plaintiff's state law trademark infringement and unfair competition claims.  See Standard Terry Mills, Inc. v. Shen Mfg. Co., 803 F.2d 778, 780 n.4 (3d Cir. 1986) (concluding that, except for the element of interstate commerce required to support a claim under the Lanham Act, the elements of common law trademark infringement under Pennsylvania and federal law are identical); see also Scott Fetzer Co. v. Gehring, 288 F. Supp. 2d 696, 701 n.7 (E.D. Pa. 2003) (explaining that federal and Pennsylvania trademark law are identical "except that the Pennsylvania law narrows the focus to acts within the Commonwealth.").

[2]  Under the Lanham Act, trademark infringement is defined as "'use of a mark so similar to that of a prior user as to be 'likely to cause confusion, or to cause mistake, or to deceive.'"  Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 711 (3d Cir. 2004) (quoting 15 U.S.C. § 1114(1))). Stated differently, "'[t]he law of trademark protects trademark owners in the exclusive use of their marks when use by another would be likely to cause confusion.'"  Freedom Card, Inc., 432 F.3d at 469 (quoting Fisons Horticulture, Inc. v. Vigoro Indus., Inc., 30 F.3d 466, 472 (3d Cir. 1994)).

services.[3] Freedom Card, Inc. v. JPMorgan Chase & Co., 432 F.3d 463, 469-70 (3d Cir. 2005); Checkpoint Sys., Inc. v. Check Point Software Tech., Inc., 269 F.3d 270, 279 (3d Cir. 2001).  The burden of proving these claims rests with the plaintiff.  A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210-11 (3d Cir. 2000); Freedom Card, 432 F.3d at 470 n.14 (citation omitted).

In the instant matter, the defendant fails to contest the second element–whether plaintiff owns the mark.[4]  Rather, the defendant contests the first and third elements of plaintiff's trademark claim.  Specifically, plaintiff failed to plead that the "Rustique" mark is valid and legally protectable.  Additionally, plaintiff failed to plead a likelihood of confusion concerning the origin of defendant's goods and services.

---

[3]  This standard also applies to plaintiff's federal unfair competition claim under the Lanham Act.  A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 & n.5 (3d Cir. 2000) (citation omitted).

[4]  "With respect to ownership of an unregistered mark, the first party to adopt a mark can assert ownership to it as long as it continuously uses the mark in its commerce."  Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 292 (3d Cir. 1991) (citation omitted).  Plaintiff alleges that it has used the "Rustique" mark continuously since 2014 to sell gifts and home décor products in addition to providing retail store services featuring the goods of others, promoting the products of others, conducting educational workshops pertaining to home décor and furniture refinishing, and making custom furnishings/wall-hangings for others.  (Id. ¶¶ 8, 18). Defendant does not argue this point, and we will not address it.

Plaintiff argues that these determinations are inappropriate to address at the motion to dismiss stage because they raise questions of fact.  Thus, plaintiff contends the court must deny defendant's motion, allow the parties to proceed through discovery, and address these issues at summary judgment.  We address the issues of whether plaintiff's "Rustique" mark is valid and legally protectable and whether defendant's use of the mark is likely to create confusion concerning the origin of defendant's goods or services *in seriatim*.

## A.  Valid and legally protectable mark

To address whether a mark is valid and legally protectable, we first determine whether the mark is registered with the United States Patent and Trademark Office (hereinafter "Trademark Office").  When a mark is federally registered with the Trademark Office, the mark becomes incontestable, and the mark's validity, protectability, and ownership are proven.  Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 291 (3d Cir. 1991) (citing Opticians Ass'n. of America v. Indep. Opticians of America, 920 F.2d 187, 192 (3d Cir. 1990)).  Here, plaintiff's mark is not federally registered with the Trademark Office.  Thus, we must address whether plaintiff's unregistered "Rustique" mark is a valid, legally

protectable trademark.

Unlike federally registered marks, unregistered marks enjoy no presumption of validity.  <u>A.J. Canfield Co. v. Honickman</u>, 808 F.2d 291, 297 (3d Cir. 1986).  For an unregistered trademark to receive legal protection, the mark must be distinct.  <u>See</u>, <u>e.g.</u>, <u>id.</u> at 296 (explaining that an unregistered trademark is entitled to protection under section 43(a) of the Lanham Act but only where the designated trademark achieves a certain level of inherent distinctiveness, i.e., something other than "generic"); <u>A & H Sportswear</u>, 237 F.3d at 221 (clarifying that a court must classify the mark in one of four categories ranging from strongest to weakest when determining whether a mark is protectable as a trademark).

The Third Circuit Court of Appeals has recognized a four-category "scale of distinctiveness" separating the mark into the following four terms, ranging from strongest to weakest: (1) arbitrary or fanciful, like "Kodak"; (2) suggestive, like "Coppertone"; (3) descriptive, like "Security Center"; and (4) generic, like "Diet Chocolate Fudge Soda."  <u>Sabinsa Corp. v. Creative Compounds, LLC</u>, (citing <u>A & H Sportswear</u>, 237 F.3d at 221); <u>A.J. Canfield Co.</u>, 808 F.2d at 296.  As the Third Circuit Court of Appeals has explained:

> Arbitrary or fanciful marks use terms that neither describe
> nor suggest anything about the product; they "bear no logical
> or suggestive relation to the actual characteristics of the
> goods." A.J. Canfield, 808 F.2d at 296 (citation omitted).
> "Suggestive marks require consumer imagination, thought,
> or perception to determine what the product is." Id. at 297.
> Descriptive terms "forthwith convey[ ] an immediate idea of
> the ingredients, qualities or characteristics of the goods,"
> while generic marks "function as the common descriptive
> name of a product class." Id. Generic marks are those that
> "function as the common descriptive name of a product
> class." Id. at 296.

A & H Sportswear, Inc., 237 F.3d at 221-22.

As previously stated, the primary purpose in assigning a level of

distinctiveness to a given mark is to ascertain whether the mark is

protectable as a trademark in the first instance. Id. (citations omitted).

Once protectability has been demonstrated, the classification of a mark as

arbitrary, suggestive or descriptive is secondarily used to ascertain the

degree of protection a mark should receive. Id. The stronger the mark,

the stronger the protection. Id.

Marks which are determined to be arbitrary, fanciful, or suggestive

are deemed to be "inherently distinctive" and enjoy Lanham Act protection.

Ford Motor Co., 930 F.2d at 291 n.18. In contrast, marks which are

merely descriptive must "acquire distinctiveness" through proof that the

consuming public comes to associate the term with a specific producer

9

rather than the product.  E.T. Browne Drug Co. v. Cococare Prods, Inc.,
538 F.3d 185, 199 (3rd Cir. 2008); Ford Motor Co., 930 F.2d at 292.  Once
a descriptive mark has acquired such distinctiveness, also known as
"secondary meaning," it becomes eligible for protection.  Id. at 191.
Finally, a mark which is determined to be generic is "never protectable"
because a manufacturer "cannot deprive competing manufacturers of the
product of the right to call an article by its name."  A.J. Canfield Co., 808
F.2d at 297.

Initially, the defendant ignores the threshold test of placing plaintiff's
non-federally registered mark on the scale of distinctiveness.  Instead, the
defendant argues that, contrary to plaintiff's allegations and absent any
discovery, plaintiff's "Rustique" mark is descriptive.  Thus, according to the
defendant, the court must delve into the depths of secondary meaning to
ascertain whether plaintiff's unregistered "Rustique" mark deserves legal
protection.

We disagree for two reasons.  First, the Third Circuit Court of
Appeals has consistently explained that the designation of a mark's
distinctiveness is an issue of fact, and therefore inappropriate to address
absent discovery or an evidentiary hearing.  E.T. Browne Drug Co., 538

10

F.3d at 192 (noting that whether "Cococare Butter Formula" is generic or descriptive, and whether this term has acquired secondary meaning are questions of fact); Citizens Fin. Grp., Inc. v. Citizens Nat. Bank of Evans City, 383 F.3d 110, 116-17, 123 (3d Cir. 2004) (recognizing that it is appropriate for the jury to determine a mark's distinctiveness–that is, whether the mark is arbitrary or fanciful, suggestive, descriptive, or generic).

Second, plaintiff has sufficiently pled that its "Rustique" mark is "arbitrary or fanciful" or "suggestive", and not "descriptive".  Plaintiff asserts its unregistered "Rustique" mark "is inherently distinctive to the public, and serves primarily as a designator of origin of plaintiff's goods and services."  (Compl. ¶ 22).   As such, "evidence of secondary meaning is not even relevant."  A.J. Canfield Co., 808 F.2d at 297.

Read in conjunction with plaintiff's factual averments, plaintiff has sufficiently pled that its "Rustique" mark is valid and legally protectable. Thus, the court will deny defendant's motion to dismiss on this issue.

## B.  Likelihood of confusion

The defendant next moves to dismiss plaintiff's Lanham Act claim, arguing plaintiff failed to plead likelihood of confusion.  The third and final

11

element of plaintiff's Lanham Act claim requires the plaintiff to establish

that the defendant's use of the similar "Rustique" mark for its goods and

services "causes a likelihood of confusion." Arrowpoint Capital Corp. v.

Arrowpoint Asset Mgmt., LLC, 793 F.3d 313, 319 (3d Cir. 2015) (quoting A

& H Sportswear, 237 F.3d at 210).  The Third Circuit Court of Appeals has

adopted a non-exhaustive list of factors to determine whether a mark for

goods and services causes a likelihood of confusion (hereinafter the "Lapp

factors")[5] as follows:

> (1) the degree of similarity between the owner's mark and the
> allegedly infringing mark; (2) the strength of the owner's
> mark; (3) the price of the goods and other factors indicating
> the care and attention one expects would be given when
> making a purchase; (4) the length of time the alleged
> infringer has used the mark without evidence of actual
> confusion arising; (5) the intent of the alleged infringer in
> adopting the mark; (6) the evidence of actual confusion; (7)
> whether the goods are marketed through the same channels;
> (8) the extent to which the target markets are the same; (9)
> the perceived relationship of the goods, whether because of
> their near-identity, similarity of function, or other factors; and
> (10) other facts suggesting that the prior owner might be
> expected to expand into the alleged infringer's market.

---

[5]  Courts within the Third Circuit commonly refer to these factors as
the "Lapp factors" based on the earlier case of Interspace Corp. v. Lapp,
Inc., 721 F.2d 460, 463 (3d Cir. 1983).  "While the Lapp factors originally
referred to competing products, it is clear that, because the Lanham Act
protects against the use of marks which cause confusion as to 'goods,
services, or commercial activities,' 15 U.S.C. 1125(a)(1), those factors
apply equally to services." Arrowpoint Capital Corp, 793 F.3d at 319-20.

Id. (citing A & H Sportswear, 237 F.3d at 215).

The Third Circuit recently explained that these "factors are best understood as tools to guide a qualitative decision, . . . none of them in itself is determinative and each must be weighed and balanced based on the particular facts of the case." Id. at 320 (citations and internal quotation marks omitted). "Nevertheless, one of the factors, the sixth in the Lapp list, is of particular significance because it focuses on evidence of actual confusion, and all of the . . . factors are only proxies for the fundamental question of whether there is a likelihood of confusion from the use of similar marks." Id. (citation omitted).

At this juncture, plaintiff has sufficiently averred a likelihood of confusion pursuant to the Lapp factors. Plaintiff has continuously used the "Rustique" mark since November 2014 to sell gifts and home décor products in addition to providing retail store services featuring the goods of others, promoting the products of others, conducting educational workshops pertaining to home décor and furniture refinishing, and making custom furnishings/wall-hangings for others. (Compl. ¶¶ 7-8). The "Rustique" mark is featured prominently in plaintiff's marketing, signage, website, and Facebook page. (Id. ¶¶ 9-10). Plaintiff also avers the

"Rustique" mark is inherently distinctive, serving as a designator of origin of plaintiff's goods and services.  (Id. ¶ 22).

Moreover, in April 2016, the defendant opened a gift shop named "Rustique Speciality Gifts" in Dallas, Pennsylvania.  (Id. ¶ 11). Defendant's store in Dallas is approximately 8.5 miles from plaintiff's store in Kingston.  (Doc. 9-1, Ex. A, Parties' Bus. Address Listings).  Similar to plaintiff, the defendant sells gifts, home décor merchandise, and related products.  (Compl. ¶ 11).  Defendant's use of the "Rustique" mark has confused customers traveling from other states to purchase plaintiff's products.  (Id. ¶ 14).  Specifically, customers have traveled to the defendant's store thinking the defendant is the plaintiff.  (Id. ¶¶ 13-14).

Viewing plaintiff's allegations as true, and given the close proximity of the parties' stores, the court may reasonably infer that defendant's continued use of the "Rustique" mark will likely cause other customers to travel to defendant's location under the mistaken belief that it is plaintiff's store.  Furthermore, the court may reasonably infer that defendant has capitalized and will continue to capitalize on plaintiff's consumer recognition.  In short, plaintiff has sufficiently alleged that the defendant's use of the "Rustique" mark for its goods causes a likelihood of confusion

to consumers.  Accordingly, the court will deny the defendant's motion on this issue.

**Conclusion**

For the above-stated reasons, the court will deny defendant's motion to dismiss plaintiff's trademark claims.  An appropriate order follows.

**Date:   11/18/16**                                  **s/ James M. Munley**
                                                      **JUDGE JAMES M. MUNLEY**
                                                      **United States District Court**

15